## KENTUCKY DISTILLERIES & WAREHOUSE CO. v. LOUISVILLE PUBLIC WAREHOUSE CO. et al.

Circuit Court of Appeals, Sixth Circuit.
June 8, 1927.

No. 4531.

1. Trial ⊕11(2)—By defendant's filing cross-petition to bring other claimant to fund into court, action at law became practically one triable in equity.

Where defendant in suit to recover a sum of money filed a cross-petition, asking that other claimant to fund be brought into court and that it have directions how to pay, action at law became practically one in equity, and should have been transferred to equity calendar, with reformed pleadings, and disposed of as an equity case.

2. Partnership ⊕130—Implication of power of majority of partners to bind minority cannot prevail, when inconsistent with limitations of agreement.

Though a majority of partners has implied power to bind minority in matters within scope of the business, such implication cannot prevail when it is inconsistent with limitations which are created by the partnership agreement, and which may be express or implied from an exclusive enumeration of granted powers.

3. Joint adventures ⊕7—Under contract for disposal of whisky providing for general committee, majority of owners had no power to authorize compensation for services in sale thereof.

Where contract, having for its purpose the disposal of whisky by several owners after the National Prohibition Act (Comp. St. § 10138¼ et seq.) took effect, expressly provided that owners might select committee, to whom was delegated the entire matter of compensation for services in selling whisky, a majority of the owners thereafter had no power to authorize compensation for services rendered in disposing of whisky, in that express enumeration of powers of majority owners tended to negative any intent that there should be other powers.

4. Interpleader ⊕35—Defendant, not filing proper bill of interpleader, held not entitled to costs out of fund up to point of discharge.

Defendant, in action wherein there were two claimants to fund, not having filed proper bill of interpleader, held not entitled to costs out of fund up to point of getting its discharge order.

In Error to the District Court of the United States for the Western District of Kentucky; Charles H. Moorman, Judge.

Suit by the Kentucky Distilleries & Warehouse Company against the Louisville Public Warehouse Company, wherein Owsley Brown was brought in by way of cross-petition. Judgment for Owsley Brown on his cross-petition, and plaintiff brings error. Reversed, with directions.

Shortly before the National Prohibition Act (Comp. St. § 10138¼ et seq.) was to take effect, the plaintiff below (which we call the Kentucky Company) and several other Kentucky owners of whisky were persuaded that the most promising course for realizing its supposed value would be to ship it to France and sell it there. This would require large advances of capital to pay the withdrawal taxes and other expenses, and so a banker was necessary; it would require the services of a warehouse company, and it would require the French importation and license privileges held by the promoter of the plan, also some services by a trustee. Accordingly a formal contract was prepared and executed, having the promoter, the banker, the owners (including the Kentucky Company), a warehouse company (one of the defendants, and which we call the Warehouse Company), and the trustee as its five parties. By its terms the management of the enterprise was confided to a committee of four, one of which was to be named by each of the parties (except the trustee). The entire matter of sales, with terms and prices, the appointment of agents to make sales, and all "questions arising under this agreement relating to shipments, sale, or other disposition of said whisky which is not specifically provided for herein," were to be determined by a majority of the committee, which determination was to be binding upon all the parties. It was expressly agreed that the pooled proceeds of the sales should be devoted to the repayment to the bankers of all advances, the payment to the Warehouse Company for the owners of $1.50 per gallon, and the payment of all expenses and charges in connection with the performance of the contract, before the net balance was to be paid over (in part) to the Warehouse Company for disbursement to the owners. There were express provisions in the contract that the majority of the owners might select their representative upon the committee, and that they might under certain circumstances declare the pool terminated, and thereupon have certain powers. No other express powers are given to the majority of the owners. The owners are not specifically named in the contract, but it is provided that owners of whisky of the quality specified may become parties by signing the contract and specifying the number of barrels put into the pool, that the total shall not exceed 30,000 barrels, and that the Warehouse Company will assist in securing consignments by owners.

The plan was carried out; a very large amount of money was received, and the com-

mittee and the trustee in charge paid out large sums for expenses, including salaries and commissions to many persons instrumental in the sales; and the $1.50 per gallon was paid to the owners. A considerable sum remained as margin to the owners above the $1.50 price, and this duly came to the Warehouse Company for distribution among the owners. Thereupon defendant Brown, the president of a corporation which was one of the owners, asked that the owners pay him compensation for his services in promoting the sales which had been made. A meeting of the owners was called to consider this request. The Kentucky Company (then in receivership) was informally notified of the meeting, but did not attend. There were present the owners of about 15,000 barrels out of the total ownership of about 20,000 barrels. Those in attendance unanimously voted that Mr. Brown should receive $1.25 per barrel from every owner. Accordingly the Warehouse Company, with the eventual consent of all owners, except the Kentucky Company, paid him that amount upon account of all the other owners, and paid all of them whatever surplus there was above $1.25. This left in the hands of the Warehouse Company $4,375, which it would have paid to the Kentucky Company, excepting that it represented the exact sum which the owners' meeting had directed should be paid to Mr. Brown on account of the Kentucky Company whisky. Thereupon the Kentucky Company brought this suit in the court below against the Warehouse Company to recover this sum of money. The Warehouse Company's answer admitted these facts, but by way of cross-petition set up the claim which Mr. Brown made to the funds, and asked that he be brought into court, and that the Warehouse Company be instructed to which party payment should be made. Brown thereupon filed an answer and cross-petition, claiming that he should have judgment against the Warehouse Company for the same amount, and the Kentucky Company replied. The case came on to be tried before a jury; there was no dispute as to any fact; each party prayed an instructed verdict; and the court instructed one in favor of Brown. The Kentucky Company brings this writ of error.

Wm. Marshall Bullitt, of Louisville, Ky. (Leo T. Wolford and Bruce & Bullitt, all of Louisville, Ky., on the briefs), for plaintiff in error.

Harris W. Coleman, of Louisville, Ky. (Trabue, Doolan, Helm & Helm, of Louisville, Ky., on the brief), for defendants in error.

Before DENISON and KNAPPEN, Circuit Judges, and HOUGH, District Judge.

DENISON, Circuit Judge (after stating the facts as above). [1] Under Liberty Oil Co. v. Condon Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232, by the filing of the cross-petition by the Warehouse Company, asking that the other claimant to the fund be brought into court and that it have directions how to pay, this action at law became practically one in equity, and should have been transferred to the equity calendar, with reformed pleadings, disposed of as an equity case, and reviewed as an equity case. It is true that the money was not paid into court, nor was payment offered, and that the court made no order bringing Brown in; but he came in, and, in the lack of any suggestion at that time that such payment ought to be made, these facts do not interfere with the transformation of the controversy from one at law into one in equity. As to the form of review, it would seem that the only difference is that, if the review is at law, the conclusion of the trial judge must be accepted, if it was supported by any evidence, while, if the review is in equity, we would exercise our own judgment upon the facts. This difference is quite immaterial in this case, for the entire record is before us, as if upon an equity appeal, and we see no obstacle in the way of deciding the merits. Section 10, Act Feb. 13, 1925 (Comp. St. § 1649b).

The controlling question plainly is whether the majority of the owners had power to bind the whole body of owners as to such a matter as this compensation to Brown. It is the claim of Brown that this pool or syndicate, while not a partnership, was a joint adventure, and that the rule of binding all by the action of the majority applies as well to joint adventurers as to partners; it is the answer of the Kentucky Company that the five parties to the contract were the joint adventurers, so that the owners as a class became only one of such joint parties; it is the reply of Brown that there may be a joint adventure within a joint adventure, and that within such subclass the same rule as to the powers of the majority would apply.

[2, 3] If for the purpose of the opinion, these general claims by Brown be accepted, they are still not sufficient. While a majority of partners has implied power to bind the minority in matters within the scope of the business, yet this implication cannot prevail when it is inconsistent with limitations which are created by the partnership agreement; and those limitations may be express, or may

be implied from an exclusive enumeration of granted powers. Here we find that the very elaborate contract carefully provided that the majority of the owners should have power to bind all the owners as to the selection of a committee member and as to a distribution plan which might later be taken up. This express enumeration of powers tends to negative any intent that there should be other powers; but this might not of itself be enough to control the case. We find, also, that the entire matter of the compensation to be paid for services in selling the whisky was delegated to the general committee. This leaves no room for any implication that the majority of the owners could fix that compensation at a greater or lesser amount. We cannot say that the giving of this entire power to this committee was not deliberate and purposeful. It was an impartial committee, representing the four interests which would be affected by the allowance of selling commissions. Any individual owner might well prefer to intrust his interests on the subject to such a committee, rather than to a meeting of owners, which might be dominated by some owners having special interests. This probability is emphasized by the fact that owners entering the pool did not know who their associates might turn out to be, or into what sort of unsatisfactory hands the majority of the owners' pool might fall. It might be dominated in number by a group of small owners with a small stake in expense questions, or, in amount, by two or three large owners, having personal relations with some expense claimant. Further, there was no seeming reason why the other profit sharers should not share also in all selling expense.

These considerations only confirm the conclusion, at which we cannot hesitate, that all the owners agreed, in effect, that no selling expenses should be allowed, except such as were approved by the joint committee, and hence that there could remain no such implied power as that upon which defendant Brown must and does rely.

[4] There seems no necessity for any special proceedings in the District Court on account of the interpleader theory. The judgment will be reversed with directions to enter a judgment in favor of the Kentucky Company against the Warehouse Company for the sum of $4,375 and such interest, if any, as the District Court may determine. The Kentucky Company will recover the costs of this appeal. Its costs in the court below will also be awarded against both defendants. If the Warehouse Company had filed a proper bill of interpleader, it would have been entitled

to its costs out of the fund up to the point of getting its discharge order; but it did not take that course.